UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HELGA VANICE,

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

17-CV-1263
DECISION AND ORDER

On December 5, 2017, the plaintiff, Helga Vanice, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On April 26, 2018, Vanice moved for judgment on the pleadings, Docket Item 6; on July 18, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on July 27, 2018, Vanice replied, Docket Item 14.

For the reasons stated below, this Court grants Vanice's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.    **PROCEDURAL HISTORY**

On September 19, 2013, Vanice applied for Supplemental Security Income and disability insurance benefits. Docket Item 4 at 16, 155. She claimed that she had been disabled since April 15, 2013, due to chronic obstructive pulmonary disease, fibromyalgia, esophageal reflux issues, anxiety, and tension headaches. *Id.* at 155.

On December 3, 2013, Vanice received notice that her application was denied because she was not disabled under the Act. *Id.* at 186-200. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 202-09, which was held on December 15, 2015, *id.* at 89. The ALJ then issued a decision on August 3, 2016, confirming the finding that Vanice was not disabled. *Id.* at 20. Vanice appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 7-9.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Vanice's objection. Vanice was examined by several different providers but only two—David Thomas, M.D., a primary care physician, and Donna Miller, D.O., a consulting family practice physician—are of significance to this Court's review of Vanice's claims.

### A. David Thomas, M.D., Primary Care

David Thomas, M.D., is Vanice's primary care provider who wrote several notes about his treatment of Vanice—and, in particular, her fibromyalgia—throughout her alleged period of disability. *See, e.g.*, Docket Item 4 at 620-38, 692-96, 735-40, 789-95, 801-05, 812-53, 1193-1273. For example, on April 2, 2015, Dr. Thomas completed a "fibromyalgia residual functional capacity questionnaire," *id.* at 1014-17, opining that Vanice met "the American College of Rheumatology criteria for fibromyalgia." *Id.* at 1014. He also diagnosed Vanice with cervicalgia and shoulder dysfunction and noted that Vanice's impairments had lasted or could be expected to last at least twelve months. *Id.* And he listed Vanice's symptoms as including multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective

2

swelling, irritable bowel syndrome, frequent severe headaches, anxiety, panic attacks, depression, and chronic fatigue syndrome.  *Id.*

Dr. Thomas wrote that Vanice's pain was constant and a nine out of ten in severity.  *Id.* at 1015.  He noted that changing weather, stress, fatigue, movement/overuse, static position, and cold precipitated her pain.  *Id.*  And he opined that Vanice's "experience of pain or other symptoms" was "severe enough to interfere with attention and concentration needed to perform even simple work tasks," so much so that she was "[i]ncapable of even 'low stress' jobs."  *Id.*

Dr. Thomas found that Vanice could walk no more than one city block "without rest or severe pain."  *Id.* at 1016.  He opined that she could sit for only ten minutes at one time before needing to get up and that she could stand for only ten minutes before needing to sit down or walk around.  *Id.*  He also opined that Vanice could sit for no more than two hours and stand for no more than two hours in an eight-hour workday.  *Id.*

Dr. Thomas also noted that Vanice needed "periods of walking around during an 8-hour working day."  *Id.*  Breaks for a walk must occur at least every thirty minutes and must last for at least five minutes each.  *Id.*  And Vanice could work only in a job that allowed her to shift her position at will from sitting, standing, or walking.  *Id.*

According to Dr. Thomas, while Vanice did not need a cane or other assistive device, she did require unscheduled breaks during an eight-hour workday.  *Id.*  Dr. Thomas opined that those breaks must occur every thirty minutes, must last for at least five minutes, and must include the opportunity for Vanice to lie down.  *Id.*  When she sits for prolonged periods of time, Vanice's feet must be elevated to chest level.  *Id.*  In fact,

3

Dr. Thomas opined that Vanice's legs must be elevated to chest level during seventy-five percent of an eight-hour workday. *Id.*

Dr. Thomas noted that Vanice could only rarely carry up to ten pounds as part of her work and could never carry more than that. *Id.* at 1017. She could rarely twist or stoop and never crouch, squat, climb ladders, or climb stairs. *Id.*

Dr. Thomas opined also that Vanice had significant limitations with reaching, handling or fingering. *Id.* Specifically, he noted that she could grasp, turn or twist objects with her hands; finely manipulate her fingers; or reach with her arms no more than ten percent of each working day. *Id.*

Based on his experience with Vanice over the years, Dr. Thomas noted that her "impairments are likely to produce 'good days' and 'bad days.'" *Id.*

### B. Donna Miller, D.O., Consulting Family Practice Physician

Dr. Miller, a family practice physician, saw Vanice only once on November 12, 2013. Docket Item 4 at 741-44. Dr. Miller noted that Vanice "appeared to be in no acute distress" during her examination. *Id.* at 742. Her notes indicate that Vanice's physical examination was consistent with normal functioning. *Id.* at 742-43. She diagnosed Vanice with chronic obstructive pulmonary disease, fibromyalgia, and gastroesophageal reflux disease. *Id.* at 743. Dr. Miller opined that Vance "should avoid dust, irritants, and tobacco exposure which may exacerbate her" chronic obstructive pulmonary disease. *Id.* at 744.

## III. THE ALJ'S DECISION

In denying Vanice's application, the ALJ evaluated Vanice's claim under the Social Security Administration's five-step evaluation process for disability

4

determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Vanice had not engaged in "substantial gainful activity" since April 15, 2013, the alleged onset date. Docket Item 4 at 18. At step two, the ALJ found that Vanice had the following severe impairments: fibromyalgia, chronic obstructive pulmonary disease, affective disorder, posttraumatic stress disorder, anxiety disorder, headaches, and esophageal reflux disease. *Id.* At step three, the ALJ determined that Vanice did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 19.

In assessing Vanice's RFC, the ALJ determined that Vanice could perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[1] but with the following limitations:

> the individual is limited to lifting and carrying 10 pounds on occasion, and up to 5 pounds frequently. She can sit for up to 6 hours in an 8 hour day, and stand or walk up to 2 hours in an 8 hour day. The claimant would

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

6

> require a sit/stand option allowing her to stand or walk up to 5 minutes after 30 minutes of sitting, and sit up to 20 minutes after 30 minutes of standing or walking, all while remaining on task. She is limited to frequent climbing of ramps and stairs, stooping, and kneeling; occasional crouching, and no climbing of no ladders, ropes or scaffolds, scaffolds [sic], and no crawling. She is limited to environments in which there is no exposure to pulmonary irritants such as odors, dusts, gasses, and poor ventilation, and no exposure to hazards such as unprotected heights or moving machinery. She is limited to simple routine tasks with no production rate or pace work, and no more than superficial interaction with the public and only occasional interaction with coworkers.

*Id.* at 20. In formulating Vanice's RFC, the ALJ "assigned great weight with respect to pulmonary irritants" to Dr. Miller's opinion. *Id.* at 23. On the other hand, the ALJ "assigned little weight" to Dr. Thomas's opinion. *Id.* at 23-24.

At step four, the ALJ determined that Vanice "is unable to perform any past relevant work. *Id.* at 24. But at step five, the ALJ determined that the Commissioner sustained her burden of establishing that Vanice had the RFC to perform "jobs that exist in significant numbers in the national economy." *Id.* Specifically, the ALJ determined that Vanice could work as a document preparer, mailroom clerk, or marking clerk. *Id.* at 25.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [Social Security Administration ("SSA")] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s]

7

whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d a 986.

## **DISCUSSION**

Vanice makes several arguments that the ALJ erred. First, she argues that the decision is not supported by substantial evidence because it is premised on erroneous findings of fact. Docket Item 6-1 at 2-3. Second, she argues that the ALJ failed to comply with the mandates of the treating physician rule with respect to her treating source opinions, including Dr. Thomas's opinion. *Id.* at 3-6. Finally, she argues that the ALJ erred in concluding that she could perform work as a document preparer or as a mailroom clerk. *Id.* at 6.

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, ___ F.3d ___, ___, 2019 WL 2273574, at *2 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "The opinion of a claimant's

8

treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must 'explicitly consider' the following nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Id.* at *3 (quoting *Selian*, 708 F.3d at 419-20). "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,' [a court is] unable to conclude that the error was harmless and consequently [must] remand for the ALJ to 'comprehensively set forth its reasons.'" *Id.* (quoting *Halloran*, 362 F.3d at 33).

Here, the ALJ considered Dr. Thomas's opinion but assigned it "little weight" because

> [t]he extreme limitations are not well explained or supported by the medical evidence of record. For example it is not clear that the claimant could need to elevate her legs to chest level 75% of the day or how that relates to any of her medical issues.

Docket Item 4 at 23.

The ALJ "fail[ed] to 'explicitly' apply the *Burgess* factors when assigning weight" to Dr. Thomas's opinion. *Estrella*, 2019 WL 2273574, at *3. He failed to consider "the first *Burgess* factor—'the frequency, length, nature and extent of [Dr. Thomas's] treatment' before weighing the value of the opinion." *Id.* (quoting *Selian*, 708 F.3d at 418). Nowhere in the ALJ's decision, for example, is the fact that Dr. Thomas treated Vanice throughout her alleged period of disability. The ALJ also insufficiently addressed the second and third factors—the amount of medical evidence supporting the opinion and the consistency of the opinion with the remaining medical evidence. Although the ALJ said that Dr. Thomas's opinion was "not . . . supported by the medical evidence of record," Docket Item 4 at 23, he leaves the reviewing court to guess as to what evidence he refers.[2]

What is more, "a searching review of the record" fails to "assure" this Court "that the substance of the treating physician rule was not traversed." *Estrella*, 2019 WL

---

[2] Moreover, under Second Circuit precedent, a "perceived lack of objective evidence" is not a "good reason" for rejecting a treating physician's opinion regarding the nature and severity of fibromyalgia because that impairment is one for which "'there are no objective tests which can conclusively confirm the disease.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)).

10

2273574, at *3 (quoiting *Halloran*, 362 F.3d at 32).  For example, the ALJ's failure to address the first *Burgess* factor is "especially relevant here because [that] factor, and therefore evidence supporting its satisfaction, is of heightened importance in the context of [Vanice's] claimed impairment" that Dr. Thomas addresses: fibromyalgia.  *Id.* at *4.  And the ALJ's conclusory discounting of Dr. Thomas's opinion does not otherwise evidence the careful consideration to which a treating source opinion is entitled.

Even more to the point, Dr. Thomas explained that Vanice's fibromyalgia is "likely to produce 'good days' and 'bad days,'" Docket Item 4 at 1017, so the ALJ's reliance on the one-time evaluation of Dr. Miller cannot justify the ALJ's decision.  Indeed, a Social Security Administration Ruling confirms that "symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days."  SSR 12-2P, 2012 WL 3104869, at *5.[3]  Thus, when viewed in light of the cyclical nature of Vanice's fibromyalgia, the opinion of the one-time consultative physician—Dr. Miller—does not provide a good reason to discount Dr. Thomas's contrary opinion.[4]

Finally, the ALJ's determination that Dr. Thomas's opinion was "not well explained" is not a "good reason" for assigning it little weight.  That is because "[t]o extent [the] record is unclear, the Commissioner has an affirmative duty to 'fill any clear

---

[3] For that reason, the Ruling explains that "it is important that the medical source who conducts the [consultative examination] has access to longitudinal information about the" claimant and that the agency should only "rely on the [consultative examination] report [without] longitudinal evidence if [the agency] determine[s] that the [consultative examination] is the most probative evidence in the case record."  SSR 12-2P, 2012 WL 3104869, at *5.

[4] Furthermore, other than Dr. Miller's note that Vanice "appeared to be in no acute distress" and other aspects of her general appearance during the examination, it is far from clear how Dr. Miller's opinion addressed Vanice's fibromyalgia at all.

11

gaps in the administrative record' before rejecting a treating physician's diagnosis." *Selian*, 708 F.3d at 420 (quoting *Burgess*, 537 F.3d at 129). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or by a paralegal.'" *Rosa*, 168 F.3d at 79 (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

Here, the ALJ explicitly found a deficiency in Dr. Thomas's medical records: he said that Dr. Thomas's opinion was "not well explained" and did not permit him to determine, for example, the relationship between Vanice's need to elevate her legs for three-quarters of each day and Vanice's medical issues. That acknowledged a gap in the record, triggering the ALJ's duty to recontact Dr. Thomas so that he could clarify his opinion.

Accordingly, Vanice's claim for disability benefits is remanded for reconsideration consistent with the procedural mandates of the SSA and Second Circuit precedent.[5]

---

[5] Vanice also argues that the decision is not supported by substantial evidence because (1) it is premised on erroneous findings of fact, (2) it failed to apply the treating physician rule also with respect to her treating psychiatrist, and (3) it erroneously concluded that she could perform work as a document preparer or as a mailroom clerk. Docket Item 6-1 at 2-6. Because Vanice's "case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate [these] dispute[s] altogether by," if necessary, clarifying Vanice's claims of disputed facts, applying the *Burgess* factors to Vanice's treating psychiatrist's opinions, and addressing Vanice's objections about her ability to work as a document preparer or a mailroom clerk. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019).

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Vanice's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: June 12, 2019
Buffalo, New York


    *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE